**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kpobari C. Tusima,<br><br>    Plaintiff,<br><br>v.<br><br>Banner University Medical Center Phoenix,<br><br>    Defendant. | No. CV-21-01693-PHX-JJT<br><br>**ORDER** |

At issue is the Motion for Summary Judgment (Doc. 63, "MSJ"), accompanied by a separate Statement of Facts (Doc. 64, "DSOF"), filed by Defendant Banner University Medical Center Phoenix ("BUMCP"),[1] to which *pro se* Plaintiff Kpobari Tusima filed a Response (Doc. 66, "Resp.") and separate Statement of Facts (Doc. 67, "PSOF"), and Banner filed a Reply (Doc. 68). Plaintiff further filed a "Response to Defendant's Reply" (Doc. 69). Banner filed a Motion to Strike Plaintiff's Response to its Reply (Doc. 70), to which Plaintiff filed a Response (Doc. 71). Having reviewed the parties' briefing and evidence, the Court finds these matters appropriate for resolution without oral argument, which no party has requested in any event. *See* LRCiv 7.2(f). For the reasons that follow, the Court finds Banner is entitled to summary judgment on each of Plaintiff's claims.

**I.    COMPLIANCE WITH THE LOCAL RULES**

Before discussing the background of the case, the Court will address two preliminary matters. First, Banner argues its Statement of Facts should be deemed admitted

---

[1] Banner University Medical Center Phoenix is not a legal entity but rather a medical facility owned and operated by Banner Health, to which the Court will refer as "Banner."

for purposes of its Motion for Summary Judgment because Plaintiff's Statement of Facts does not comply with Local Rule of Civil Procedure 56.1(b). Second, Plaintiff responded to this and other arguments made by Banner in a "Response to Defendant's Reply" (Doc. 69), which Banner moves to strike pursuant to Local Rule 7.2(m)(1).

The Court will grant Banner's Motion to Strike Plaintiff's Response to Defendant's Reply, which the Court construes as an unauthorized surreply. Plaintiff argues he did not need to seek leave to respond to Banner's Reply in support of its Motion for Summary Judgment, but that is incorrect. Local Rule 56.1, which is applicable to motions for summary judgment filed in this Court, does not authorize surreplies. Plaintiff's failure to seek leave to file a surreply is sufficient grounds to strike it. *See Williams v. City of Tempe*, No. CV-17-02161-PHX-SMB, 2019 WL 2905890, at *3 (D. Ariz. July 5, 2019), *aff'd sub nom. Williams v. Albertsons Companies LLC*, 822 F. App'x 579 (9th Cir. 2020); *see also, e.g.*, *Silvas v. GMAC Mortg., LLC*, No. CV-09-00265-PHX-GMS, 2009 WL 4573234, at *3 (D. Ariz. Dec. 1, 2009), *as amended* (Jan. 5, 2010) (striking surreply where nothing therein "could be construed as a motion for leave to file a surreply"). Moreover, Plaintiff fails to point to any extraordinary circumstances warranting the filing of his surreply, which substantially repeats the arguments in his Response. *See Fitzhugh v. Miller*, No. CV-19-04632-PHX-DWL, 2020 WL 1640495, at *9 (D. Ariz. Apr. 2, 2020) (noting "sur-replies are highly disfavored and permitted only in extraordinary circumstances" and "discretion should be exercised in favor of allowing a surreply only where a valid reason for such additional briefing exists" (citations and quotation marks omitted)).

The Court will also grant Banner's request that its Statement of Facts be deemed admitted for purposes of its Motion for Summary Judgment. Local Rule 56.1(b) provides:

> Any party opposing a motion for summary judgment must file a statement, separate from that party's memorandum of law, setting forth: (1) for each paragraph of the moving party's separate statement of facts, a correspondingly numbered paragraph indicating whether the party disputes the statement of fact set forth in that paragraph and a reference to the specific admissible portion of the record supporting the party's position if the fact is disputed; and (2) any additional facts that establish a genuine issue of

material fact or otherwise preclude judgment in favor of the moving party. Each additional fact must be set forth in a separately numbered paragraph and must refer to a specific admissible portion of the record where the fact finds support. No reply statement of facts may be filed.

Plaintiff's Statement of Facts does not comport with these requirements. It does not include numbered paragraphs corresponding to those in Banner's Statement of Facts, nor indicate whether or which facts asserted by Banner are disputed. The majority of Plaintiff's asserted facts are also unaccompanied by citations to the record. This is problematic because the party opposing a motion for summary judgment has the burden of showing a genuine dispute of material facts exists, and courts "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citation omitted).

Given Plaintiff's non-compliance with Local Rule 56.1(b), the Court will treat Banner's Statement of Facts as undisputed for purposes of its Motion for Summary Judgment, provided there is support in the record for its factual assertions. *See Szaley v. Pima County*, 371 F. App'x 734, 735 (9th Cir. 2010) (affirming district court's exercise of such authority). In light of Plaintiff's *pro se* status, however, the Court declines Banner's request to disregard the additional facts Plaintiff asserted in support of his Response, but only to the extent support for these facts is readily apparent in the evidence before the Court and their consideration does not work an unfairness. *See Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("requiring the district court to search the entire record" is both unfair to the court and "profoundly unfair to the movant," as it results in the court acting as the non-movant's lawyer and may deprive the movant of fair notice).

## II.     BACKGROUND

This case concerns Plaintiff's employment in BUMCP's perioperative department for a period of approximately seven months in 2020. Plaintiff was born in Nigeria and became a United States citizen in 2009. (Resp. at 5.) He describes his race as African American and his ethnicity as Ogoni. (*Id*.) Plaintiff alleges Banner terminated his

- 3 -

employment on account of his color, race, and national origin. Banner contends it terminated Plaintiff's employment because his performance was poor, which he disputes.

Banner hired Plaintiff as a New Graduate Registered Nurse ("New Grad RN") in the perioperative department in April 2020. (DSOF ¶ 1.) He was one of four New Grad RNs in the program. (DSOF ¶¶ 96–97.) Banner notes Plaintiff initially failed the exam that New Grad RNs are required to take prior to working in the operating room under the supervision of practicing RNs, known as preceptors, who train the New Grad RNs while taking care of patients. (DSOF ¶¶ 4–7.) According to BUMCP's Associate Director of Perioperative Services, Georgiana Elias ("Ms. Elias"), at least eight preceptors reported to her they were concerned about Plaintiff's performance once he started in the operating room. (DSOF, Ex. 1, Declaration of Georgiana Elias ("Elias Decl.") ¶ 9.) For example, preceptors reported Plaintiff was not retaining information and had to be given the same instructions and explanations repeatedly. (DSOF ¶¶ 17, 24, 28, 41.) They reported Plaintiff needed prompting to complete required tasks and they questioned whether he was paying attention and understanding what he was being told. (DSOF ¶¶ 24, 41.)

Ms. Elias met with Plaintiff to discuss his performance and how he could improve; she documented 17 meetings between them. (Elias Decl. ¶¶ 10–14; DSOF, Ex. 5, Chronological Management Record.) Preceptors sat in on at least one of these meetings. (DSOF ¶ 40.) Ms. Elias coached Plaintiff to help him improve and gave him suggestions for how to do so, some of which Plaintiff agreed were helpful. (DSOF ¶¶ 14, 19–21.) Despite this, preceptors continued to report concerns with his performance. On August 17, 2020, he was issued a Documented Verbal Discussion ("DVD")—Banner's first level of corrective action—which noted the preceptors' concerns. (DSOF ¶¶ 34–39.) The DVD summarized: "Kpobari, while demonstrating an openness to feedback and working positively with the team, is not meeting expectations for his orientation to progress despite leadership and educational support and adjustments to his orientation." (DSOF, Ex. 6.)

Nearly two months later, preceptors continued reporting similar concerns and, on October 9, 2020, Plaintiff was issued a Written Corrective Action ("WCA")—the next

level of corrective action. (DSOF ¶ 43.) The WCA summarized: "Despite set goals, preceptor adjustments, tailored orientation strategies, Kpobari continues to not meet expectations of safety and independent practice." (DSOF, Ex. 8.) Plaintiff testified he was not concerned about the WCA or the concerns raised therein at the time. (DSOF, Ex. 3, Deposition of Kpobari Tusima ("Tusima Dep.") at 238:9–21.) When Ms. Elias and the RN Clinical Services Senior Manager, Marissa Gamero, offered to move Plaintiff to another department, he declined. (DSOF ¶¶ 47–48.) On October 23, 2020, Plaintiff was issued a Final Corrective Action ("FCA")—the final step in the corrective action process—which noted the same concerns from preceptors and cited examples supporting these concerns. (DSOF ¶ 49; Ex. 9.) One cited example involved a miscounting of surgical instruments during the closing of a patient's abdomen. The FCA stated: "[I]f the preceptor had not stepped in there was a potential for a retained item," which presented a "significant safety concern for the patient." (DSOF Ex. 9.) Plaintiff did not dispute this occurred but asserted the preceptor "jumped in" before Plaintiff could remedy the problem. (Tusima Dep. at 276:5–277:4.) The FCA stated Plaintiff was not receptive to the feedback reported by the preceptors and was defensive. (DSOF Ex. 9.) The FCA concluded:

> At this point, the expectation is that after one more week of orientation and evaluation, Kpobari will be able to practice without the preceptors needing to jump in to prevent a [patient] safety concern, an error, or a delay of case.
>
> Kpobari verbalized understanding that not meeting the expectations above would lead to the ending of his employment with Banner Health.

(DSOF Ex. 9.) Plaintiff testified he was "not worried" about his employment being terminated at the time. (Tusima Dep. at 282:20–283:7.) After further negative feedback, Banner terminated Plaintiff's employment on November 3, 2020. (DSOF ¶¶ 58–62.)

Plaintiff disputes his job performance was unsatisfactory. In his Statement of Facts, he asserts Ms. Elias "repeatedly lied that the preceptors she assigned to the plaintiff reported her that plaintiff did not retained information they are telling him, and that plaintiff

continue to perform poorly on the job."[2] (PSOF at 2.) Although, as noted, Plaintiff does not cite any portion of the record in support of this assertion, it mirrors Plaintiff's deposition testimony in which he frequently stated Ms. Elias lied about what preceptors reported to her. (*See, e.g.*, Tusima Dep. at 132:21–24, 134:17–24, 145:4–7, 232:12–19.) In his Statement of Facts, Plaintiff asserts that most of his preceptors "saw that he was following directions and doing what they taught him." (PSOF at 2.) Although largely unsupported by citations to the record, this assertion reflects his deposition testimony. (*See, e.g.* Tusima Dep. at 232:12–17, 238:9–21, 282:20–283:2, 314:8–15–19.) Plaintiff also points to two internal Banner documents, titled Competency Achievement Plan and Addendum, in which preceptors checked boxes indicating Plaintiff successfully completed certain tasks on certain dates and affixed their signatures to confirm the same. (DSOF, Exs. 15, 16.) For example, the Addendum contains checks on boxes indicating he demonstrated instrument counting, patient communication, and intervention to maintain normothermia. (DSOF, Exs. 15, 16.) Ms. Elias disputes Plaintiff's reliance on these documents, which she testified track only "initial validation" and are not "intended to reflect performance, much less the quality or sufficiency of such performance." (Elias Decl. ¶ 90.)

After his termination, Plaintiff filed a Charge of Discrimination (the "Charge") with the Arizona Civil Rights Division ("ACRD") on February 10, 2021. (DSOF Ex. 14.) In the meantime, Plaintiff had begun new employment. He has had continuous employment—at a higher rate of pay than he had as a New Grad RN with Banner—since at least January 5, 2021. (DSOF ¶¶ 69–75.) Plaintiff has submitted evidence of positive performance feedback from two of his subsequent employers, Aurora Behavioral Health Systems, LLC, and Valleywise Health d/b/a Valleywise Behavioral Health Center – Mesa. (PSOF, Exs. C, D.) After the ACRD dismissed Plaintiff's Charge on August 13, 2021, Plaintiff filed the instant action on October 5, 2021, alleging claims of discrimination on account of his race, color, and national origin pursuant to Title VII of the Civil Rights Act of 1964. (Doc. 1.)

---

[2] The Court quotes Plaintiff's assertions directly without using "[sic]."

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 232. When the moving party does not bear the ultimate burden of proof, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party carries this initial burden of production, the nonmoving party must produce evidence to support its claim or defense. *Id.* at 1103. Summary judgment is appropriate against a party that "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, as long as it is supported by affidavits or other evidentiary material. *Anderson*, 477 U.S. at 255. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Id.* at 256–57

(holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." (citation omitted)).

## IV.  ANALYSIS

### A.  Exhaustion of Administrative Remedies as to Color Discrimination

Banner argues Plaintiff's claim of color discrimination fails because he did not exhaust his administrative remedies as to this claim. As noted, Plaintiff filed a Charge with the ACRD in February 2021. (DSOF Ex. 14.) In his Charge, Plaintiff checked boxes for causes of discrimination based on race and national origin. In his Discrimination Statement, Plaintiff alleged Banner discriminated against him "because of my race, Black, and national origin, Nigerian." He did not check the box for a cause of discrimination based on color, nor did his Statement specifically allege color discrimination. Plaintiff does not offer any additional evidence relating to his ACRD Charge and makes only a conclusory argument that he did not fail to exhaust his administrative remedies. (*See* Resp. at 5.)

To seek relief under Title VII, a plaintiff must first exhaust any administrative remedy available under 42 U.S.C. § 2000e-5 by filing a charge of discrimination with the EEOC or appropriate state agency. *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1104 (9th Cir. 2008). "Even when an employee seeks judicial relief for claims not listed in the original EEOC charge, the complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge." *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002) (citation and quotation marks omitted). Allegations in a complaint are reasonably related to those in the administrative charge to the extent they are "consistent with the plaintiff's original theory of the case." *Id*. The Ninth Circuit instructs that a plaintiff's administrative charge is to be interpreted liberally. *Id*.

Although the Ninth Circuit does not appear to have addressed the issue, several courts have held that a plaintiff whose administrative charge claims only race and/or national origin discrimination and does not contain any allegations of discrimination based

on the particular tone of his or her skin has not exhausted his or her administrative remedies as to a color-discrimination claim. *See, e.g.*, *Bryant v. Bell Atl. Maryland, Inc.*, 288 F.3d 124, 132–33 & n.5 (4th Cir. 2002) (holding plaintiff failed to exhaust administrative remedies where administrative charge alleged race discrimination and was "devoid of any hint that his particular skin tone motivated the alleged discrimination"); *Richardson v. HRHH Gaming Senior Mezz, LLC*, 99 F. Supp. 3d 1267, 1273–74 (D. Nev. 2015) (finding plaintiff failed to exhaust administrative remedies where he did not check box for color discrimination and alleged only discrimination based on race in his administrative charge, which was "devoid of allegations of discrimination based on his skin tone"); *Morgan v. Freightliner of Ariz., LLC*, No. 16-498-TUC-CKJ, 2017 WL 2423491, at *5–7 (D. Ariz. June 5, 2017) (finding plaintiff failed to exhaust administrative remedies where his administrative charge alleged discrimination "because of my race, national origin, Mexican" and did not contain allegations upon which "to infer and investigate a claim of color discrimination"). The Court finds these authorities to be persuasive.

It may be counterintuitive that an allegation of discrimination based on race—for example, Black or African American—is not necessarily like or reasonably related to an allegation of discrimination based on color, but this conclusion flows from the fact that race- and color-discrimination claims are distinct. The distinction, as the Fourth Circuit noted in *Bryant*, is that "[c]olor discrimination arises when the particular hue of the plaintiff's skin is the cause of the discrimination, such as in the case where a dark-colored African-American individual is discriminated against in favor of a light-colored African-American individual." 288 F.3d at 132 n.5; *see also Cooper v. Jackson-Madison County Gen. Hosp. Dist.*, 742 F. Supp. 2d 941, 950 (W.D. Tenn. 2010) ("Even though race and color clearly overlap, they are not synonymous." (quoting EEOC Compliance Manual, § 15-III (Apr. 19, 2006)). Here, because Plaintiff's Charge is devoid of any allegations of discrimination based on the tone of his skin, separate and apart from his race, the Court finds he failed to exhaust his administrative remedies as his color-discrimination claim.

. . . .

- 9 -

### B. Whether Plaintiff Has Raised Triable Issues of Material Fact

Banner next argues Plaintiff's claims fail as a matter of law because he cannot establish a prima facie case of discrimination on account of his race, color, or national origin. To show a prima facie case of disparate treatment, a plaintiff must offer evidence that "give[s] rise to an inference of unlawful discrimination." *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). One way of showing a prima facie case is to "produce direct or circumstantial evidence demonstrating that a discriminatory reason 'more likely than not motivated' the employer." *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 690 (9th Cir. 2017) (citation and quotation marks omitted). Plaintiff points to no such evidence here. For example, he does not claim any Banner employees made discriminatory comments against him. (Tusima Dep. at 371:15–372:13.) Rather, Plaintiff argues other similarly situated New Grad RNs were progressed and not terminated and Ms. Elias "made the whole job performance issue up to justify her discriminatory act." (Resp. at 7, 9.)

Plaintiff's arguments direct the inquiry to the burden-shifting framework under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To establish an inference of discrimination under the *McDonnell Douglas* framework, the plaintiff must first show:

> (1) the plaintiff belongs to a protected class, (2) he was performing according to his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) similarly situated employees were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination.

*Reynaga*, 847 F.3d at 691. When the plaintiff demonstrates a prima facie case, the burden then shifts to the defendant to provide "a legitimate, non-discriminatory reason for the adverse employment action." *Id*. If the defendant does so, the burden shifts back to the plaintiff to "raise a triable issue of material fact as to whether the defendant's proffered reasons . . . are mere pretext for unlawful discrimination." *Id*. (citation omitted).

Here, Banner does not dispute that Plaintiff satisfies the first and third elements of *McDonnell Douglas*'s prima facie case, but argues he has not satisfied the second and fourth elements. Banner also points to the evidence that Plaintiff's poor job performance

1  was the legitimate, nondiscriminatory reason for his termination and argues Plaintiff has
2  failed to establish a triable issue as to whether this reason was pretextual.

### 1. Plaintiff's Job Performance

Banner argues Plaintiff cannot show he was performing according to Banner's legitimate expectations. As noted, Banner has submitted undisputed evidence that Plaintiff had significant performance issues as a New Grad RN; that Plaintiff's supervisor, Ms. Elias, coached him on how to improve yet the issues persisted; and that, prior to his ultimate termination, Plaintiff was issued a series of escalating corrective actions, which he acknowledges he did not take seriously at the time. The question is whether Plaintiff can point to contrary evidence to carry his initial burden of showing his performance was satisfactory. At this stage, Plaintiff's burden is not a heavy one. *See Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 660 (9th Cir. 2002) ("[T]he requisite degree of proof necessary to establish a prima facie case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence.").

Plaintiff repeatedly asserts that Ms. Elias lied about his job performance and maintains his performance was satisfactory. Banner responds that Plaintiff's subjective beliefs are insufficient to raise a genuine factual dispute. In support, Banner cites Ninth Circuit cases holding "an employee's subjective personal judgements of her competence alone do not raise a genuine issue of material fact." *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996); *see also Bulh v. Abbott Labs.*, 817 F. App'x 408, 411 (9th Cir. 2020) (citing *Bradley*). However, the Ninth Circuit later clarified "this holding did not pertain to the minimal showing needed to establish a prima facie case; rather, it spoke to the employee's lack of specific and substantial evidence showing that the employer's reasons for terminating him were false or discriminatory." *Aragon*, 292 F.3d at 660.

In any case, Plaintiff points to other evidence that, he contends, demonstrates his satisfactory job performance: the Competency Achievement Plan and Addendum. Banner mounts several attacks against Plaintiff's reliance on these documents. These attacks are equally applicable to Banner's proffered legitimate, non-discriminatory reason for

terminating Plaintiff's employment. Given Plaintiff's minimal burden at *McDonnell Douglas*'s first step, and the potentially dispositive nature of Banner's argument at the second and third steps, the Court will assume without deciding Plaintiff satisfies the second element of his prima facie case and will address the evidence of his job performance below.

### 2. Similarly Situated Employees

Banner next argues Plaintiff cannot show similarly situated employees outside of his protected classes were treated more favorably. To satisfy this element of the prima facie case, the plaintiff must show that the employees who were treated more favorably are similarly situated "in all material respects." *Hawn v. Exec. Jet. Mgmt., Inc.*, 615 F.3d 1151, 1157 (9th Cir. 2010). The Ninth Circuit has held employees are similarly situated if they have "similar jobs and display similar conduct." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003). In support of this proposition, the Ninth Circuit first cited the Eighth Circuit's opinion in *Ward v. Procter & Gamble Paper Products Company*, which held "[e]mployees are similarly situated when they are involved in or accused of the same offense and are disciplined in different ways." 111 F.3d 558, 560 (8th Cir. 1997). The court then cited its decision in *Wall v. National Railroad Passenger Corporation*, which found no error in the district court's conclusion that the plaintiff did not show he was treated less favorably than similarly situated employees because the other employees had no disciplinary record and were thus not similarly situated. 718 F.2d 906, 909 (9th Cir. 1983).

Plaintiff argues the three other employees who completed Banner's New Grad RN program without discipline are similarly situated to him. However, "[i]t is not enough for employees to be in similar employment positions; rather, the plaintiff and the comparator employee must be 'similarly situated . . . in all material respects.'" *Weil v. Citizens Telecom Servs. Co., LLC*, 922 F.3d 993, 1004 (9th Cir. 2019) (quoting *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006)). Plaintiff makes no argument, and identifies no evidence to support any such argument, that these employees displayed similar performance issues, received similar corrective actions, or were otherwise similarly situated to Plaintiff in all material respects. *See id*. (finding plaintiff failed to show other employees were similarly

situated where he introduced no evidence that they engaged in similar conduct such as failing to meet deadlines or complete tasks or received declining performance reviews). Underscoring the point, Ms. Elias testified: "No preceptor reported performance concerns to me regarding any of the other New Grad RNs, nor did I observe any, and no other New Grad RN received corrective action." (Elias Decl. ¶ 23.) Plaintiff attacks Ms. Elias's credibility, but he fails offer any contrary evidence. Nor does the treatment of the other New Grad RNs otherwise give rise to an inference of discrimination; indeed, Banner notes one of the successful New Grad RNs is also Black. (DSOF ¶ 98.) Minimal as Plaintiff's burden to demonstrate a prima facie case may be, he has not satisfied its fourth element.

### 3. Legitimate, Nondiscriminatory Reason for Termination

Even if Plaintiff could demonstrate a prima facie case, he has failed to establish a genuine dispute of fact as to whether Banner's proffered reason for terminating his employment was a pretext for unlawful discrimination. As noted, Banner has provided undisputed evidence to support its assertion that it terminated Plaintiff's employment because his job performance was not satisfactory, which is "a legitimate, nondiscriminatory reason for terminating [his] employment." *Aragon*, 292 F.3d at 661. Thus, Banner has satisfied its burden at *McDonnell Douglas*'s second step and the burden shifts back to Plaintiff to "raise a triable issue of material fact as to whether the defendant's proffered reasons . . . are mere pretext for unlawful discrimination." *Reynaga*, 847 F.3d at 691. To create a triable issue, Plaintiff must produce "specific and substantial" evidence showing that "either . . . a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence." *Villiarimo v. Aloha Island Air., Inc.*, 281 F.3d 1062–63 (9th Cir. 2002) (citations omitted).

Plaintiff has not met his burden at *McDonnell Douglas*'s third step. At this step, Plaintiff's attack on Ms. Elias's credibility is not enough: To create a triable issue, he "must do more than . . . deny the credibility of [his employer's] witnesses." *Bradley*, 104 F.3d at 270. Nor is Plaintiff's subjective assessment of his own job performance sufficient. *See id*. Plaintiff's reliance upon the Competency Achievement Plan and Addendum fares no better.

Ms. Elias testified—and Plaintiff points to no evidence to dispute—that neither of these documents is "intended to reflect performance, much less the quality or sufficiency of such performance." (Elias Decl. ¶ 90.) Banner also points out that these documents contain feedback to Plaintiff about needing to improve his performance. (DSOF ¶ 94.) Moreover, even if these documents showed Plaintiff performed certain tasks successfully at certain times, they do not provide a sufficient basis to reasonably conclude Banner's proffered explanation that his performance did not meet its expectations is "unworthy of credence." *Villiarimo*, 281 F.3d at 1063. As to Plaintiff's evidence of his performance in different positions in subsequent employment, this evidence is immaterial to whether his performance as a New Grad RN comported with Banner's legitimate expectations.

Regardless of whether Plaintiff's performance really was as poor as Banner contends, Plaintiff points to no evidence suggesting that Ms. Elias did not genuinely believe the preceptor's reported concerns. *See Villiarimo*, 281 F.3d at 661 (noting "courts only require that an employer honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless" (citation and quotation marks omitted)). In other words, Plaintiff points to no evidence—other than his own belief—that her decision to terminate his employment was on account of his race, color, or national origin, rather than a genuine belief that Plaintiff was not performing according to Banner's legitimate expectations. *See Carmen*, 237 F.3d at 1028 ("A plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive.").

## V.  CONCLUSION

Plaintiff has not offered evidence giving rise to an inference of unlawful discrimination on account of his race, color, or national origin. He has shown neither direct nor circumstantial evidence indicating that discrimination likely motivated Banner's decision to terminate his employment, nor has he created triable issues of material fact under *McDonnell Douglas*'s burden-shifting framework. He also failed to exhaust his administrative remedies as to his color discrimination claim. Thus, Banner is entitled to

summary judgment on each of Plaintiff's claims. The Court need not consider Banner's alternative argument for limiting any award of backpay. (*See* MSJ at 15–16.)

**IT IS THEREFORE ORDERED** granting Defendant Banner University Medical Center Phoenix's Motion for Summary Judgment (Doc. 63) on all of Plaintiff Kpobari Tusima's claims.

**IT IS FURTHER ORDERED** granting Defendant's Motion to Strike Plaintiff's Surreply (Doc. 70). The Clerk of Court is directed to strike Doc. 69 from the docket.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter final judgment accordingly and close this case.

Dated this 10th day of May, 2023.

Honorable John J. Tuchi
United States District Judge